Glenn Murillo came to the United States at age 14 on a tourist visa, soon overstayed, and became the beneficiary of an immigrant visa petition filed by his permanent resident mother. When the petition came current, he wasn't able to adjust status prior to 245i. He went to Canada. Can you help me on this? Since I'm not a specialist in immigration law, it's very esoteric for me. So tell me if my understanding is right. I'll bounce it off you what I learned from the briefs, and then you correct me. Thank you. I think you go to Canada when your visa expires to avoid an overstay, and you go to the U.S. consulate there to get a new visa. If I can interject, Your Honor, this is a procedure that's arcane. It doesn't exist anymore. So this is something that used to be part of administrative practice but was terminated in the late 80s, and only cases that were in the pipeline were allowed to go to Canada. Okay, but that applies to this case, right? Yes. Okay. And then in Canada, either they give you a visa or they parole you into the United States, and the parole is so that Canada doesn't get burdened with all the people that got turned down for a visa. No, actually, Your Honor, Canada is very concerned about people in Canada who are out of status. So they want to make sure before somebody is allowed to stay outside process other than their home country that they're able to go home. One way or another, Canada insists... So there's a treaty, there's an agreement that allows them to come back. But one way or another, Canada insists either you, the United States, let them in by visa or let them in by parole. Correct. And at one point, the government let them in right back into the status that they left under, which is usually by visa, but at a certain time, they shifted their policy to parole them instead. Okay. Now, the way I understand it, if you don't get a visa, the parole leaves you in the same position legally as somebody who's outside the United States knocking on a door asking to come in. By the discretion of the government, and that's exactly what we're arguing, that the government, as a matter of policy, implemented a procedure that was not appropriate for this particular individual to allow him to immigrate. I'm not getting to the individual yet. Yes. I'm just getting to what the parole statute says. Well, unfortunately, the statute, and I gave the Court a 28-J letter because it dawned on me that the statute doesn't cover this kind of parole very cleanly, reason being that the statute gives the Attorney General exclusive authority over parole. This entails an agreement between Canada and the United States, necessarily implicating the Department of State. Tell me what I'm missing. What I'm reading is these words in 8 U.S.C. 1182, subsection 5A. It says, His case shall continue to be dealt with in the same manner as that of any other applicant for admission into the United States. That's how I understood it to be, like you're outside knocking on a door asking to come in. But the beginning of that paragraph talks about the Attorney General's exclusive powers. Yes. And here we have an agreement where a consular officer signs off on it, signs off on a letter to let you back in the country. So obviously we're out of the statute because the consular officer has nothing to do with the Attorney General. Well, the Attorney General delegates his parole authority. To the consular officer? These are separate derivations of authority. The consular officer gets his authority from the Department of State rather than the Department of Justice. Oh, so you're saying this isn't 5A parole at all because it's not Department of Justice, it's Department of State. It's under the treaty power. It's quite unusual for that reason. And so all of our precedent really doesn't apply here. And that's why I thought it would be important to give the Court a 28-J letter. So the crux of your argument is this isn't 5A parole because it's not anyone in the Justice Department granting it. This is a different kind of parole pursuant to treaty because somebody in the State Department is granting it. There's a partnership there. There's a coordination. There's an interplay between the Department of Justice and the Department of State. And that's an important part of the argument. I wouldn't say it's the crux. Navarro v. Spora is a case that also addresses, in terms of due process concerns, that addresses this Petitioner's concern. Does the Court have any more questions? No. I think you directed me to the part where I steer away from 5A. Thank you. So we come back to the country with a conviction, and we have a conviction no more, Your Honors. We have a conviction that's been vacated on procedural and equitable grounds, but more so on procedural. And we try to adjust while we're in exclusion proceedings. Notwithstanding that the Board has allowed adjustment, even with a final exclusion order pursuant to matter of Castro Padron and matter of C.H., we're not able to adjust because the service, and I gave the Court some supplements, the service received his application and then put it in storage. But there's evidence that they received it. And they're refusing to adjust him because they're claiming that he's got a conviction. Unfortunately, that's not on the record. It's not on the record because they refused to appeal this issue. They adopted the decision of the immigration judge who found exclusion proceedings proper. That leaves him in a position to show up again and try to adjust, get locked up, and get shipped to the Philippines rather than having his case adjusted. This is procedurally wrong. It's a simple matter of due process or simple matter of law. Excuse me. And what they're trying to do is do an end-run around Lujan Armendariz Because the clear meaning of Lujan Armendariz, that he can otherwise be disposed of under the Federal First Amendment statute, applies to this gentleman. He has a conviction where the sentence is less than a year, and it was his first sentence. So if I can just finish my sentence, Your Honor. So rather than that issue being before this Court right now, only the issue of exclusion proceedings is before this Court. The service then is avoiding their main concern, which is clearly on the record, that they don't consider this to be a vacated conviction, that they consider this to be a conviction, and they want him out of the country for that reason. And once he's out, he's not coming back for 10 years subject to 12a 9b. So they've avoided this Court's concern about Lujan Armendariz and haven't even addressed the equities of this man's case. Counsel, before we run out of time, let me get you back to what's troubling me here. Yes, Your Honor. You explained to me why there would be a deviation from 5a, because the consular officer isn't the Department of Justice officer. Yes, Your Honor. Now, 5a has the language that says you're just like you're outside knocking on the door to come in.  So how can I make a case that the person in his case shall continue to be dealt with in the same manner as that of any other applicant for admission in the United States? I just look back at your brief, and maybe I missed it. Is there some other statute that has parole where your case isn't dealt with in the same manner as any other applicant for admission? Not that I know of, Your Honor. And that's what makes this case rather quirky. When we're left with an administrative policy that derives its power from, straight from the executive department, both the Department of Justice, Department of State, working in concert with each other, we're then left to relean on the Constitution. And we have to look at Navajo Explorer, if I may, which notes that assuming petitioner understood the Constitution is not a plenary authority to the Congress. So that's why I keep looking so hard at these statutes. Well, the Constitution gives plenary authority to Congress, but Congress didn't address this. Congress didn't address it directly. It's a service acting under its treaty power. But aside from that, Your Honor, if I may, the Constitution does give individuals the right to due process. They give them the right to notice, to know what they expect. The procedures in question annotated in I-130 with an explanation as follows. From the information immediately available, the beneficiary appears to be ineligible for adjustment of status, and in all likelihood will be permitted to remain in the United States pending the issuance of a visa. That was stamped on as I-130. After he got his conviction vacated, he could have gone right back up to Canada and counsel a process subject without being before subject 212a9b, where he'd be 10 years barred from entering. He'd have been fine, right? If once he got his conviction vacated, while he was still legitimately in the U.S. and nothing had expired, he could have gone to Canada, gotten a visa, come back into the U.S. Correct. He'd be fine. Correct. And his problem is that he overstayed, right? Correct. But he could also adjust status pursuant to 245i nowadays. This procedure existed prior to 245i. It was for people who didn't qualify to adjust under 245a, and it allowed them to counsel a process nearby rather than be separated from their families due to where all their families are in the United States and none are in the home country. I'm out of time. I'm given 20 seconds. I want to hear from the government. Thank you. Go ahead. Good morning, Your Honors. Ari Nazaroff representing the government. Your Honors, this is actually a very simple case. Mr. Morello conceded not once but twice, while represented by counsel, his excludability under 212a. What's more, Petitioner's counsel did not challenge that finding by the board either before the board or before this Court, and he has failed to exhaust his remedies and waive that argument here. Can I ask you just a couple of questions about the Petitioner? Any other criminal history than this now vacated? Wasn't it a misdemeanor marijuana conviction? I believe it was a ---- A jail time, $300 fine? I believe so, Your Honor. But ---- Can I? I'm not quite done. I'll tell you when I am done. Okay? Absolutely, Your Honor. His mother, at the time of the petition off of her, was a permanent resident. Is that right? I'm not sure about that. Your counsel said that in his briefs and here at argument. Do you have any evidence to dispute it? I don't, Your Honor. Do you know whether she's a citizen now? I don't, Your Honor. Okay. And he's married now? I don't know. That's also in the briefs. He's married to a U.S. citizen. Is that right? He might be, Your Honor. And has a U.S. citizen child. Well, don't you check these things out? I thought this was all on the record. Yes, it is, Your Honor. Yes. I thought you knew the record better than I did, because I've got 35 cases and you've got one. I believe that is in the record, Your Honor. Now, about six months ago, all of the judges of this Court met in a conference room in this building, or most of the judges, with Michael Krepke, the chief immigration judge, Juan Osuna from the Board of Immigration Appeals, people from oil. And we were told pretty affirmatively that in cases like this where there was a track towards exclusion or deportation, but there was also a pending application for adjustment on the merits that appeared to have merit, that the government would participate in good faith and mediation to resolve the case. Do you know anything about that? I don't, Your Honor. But that doesn't change the fact. I know what your position is on the law, okay? Yes, sir. What I'm asking is, is it correct that absent the Canadian visa problem, he's got a valid claim to immigrate off his mother? Well, Your Honor, he overstayed his visa twice. Understand, every single asylum applicant we see in this courthouse, with very rare exceptions, is out of status. Okay? So put that aside. We know what your position is on exclusion, and we know the technicalities here. If he'd gone back to Canada and reapplied, if he were in deportation as opposed to exclusion, he could apply. My question is, put that aside for the moment. Does he appear to have a meritorious position to immigrate off his mother? Your Honor, I can't answer that question. I would be adjudicating that. They haven't researched it. Well, I — You don't know the state of the record on that subject. On that subject, I can't answer your question, Your Honor, because I would be adjudicating — I would be acting as a judge. I'm here defending — I'm not asking you to adjudicate it. I use the word appear deliberately. Under ordinary circumstance, a person in Murillo's situation, especially now that he's married apparently to a U.S. citizen and has a U.S. citizen child, why wouldn't the government allow the individual to go ahead and immigrate? Your Honor, this doesn't change in this case the fact that Petitioner, through his counsel, has conceded to be excluded. And Mr. Murillo is bound by the acts of his attorney and therefore is inadmissible in this petition for review. Is that a great Latin quotation on the seal of the Department of Justice, and when you walk in the building, it's in Latin, and have you ever seen it?  And you know what it means? Justice will lie in the land when it lies in the hearts and minds of the people. That's what it says. And it reminds the people that go in and out of that building that work for the department — and I worked for it at one time as a U.S. attorney — it reminds them then that they're in the business of justice, not the hard application of the law. Justice. This is not a terrorist. This is not somebody with a long criminal history. We see those kind all the time. This is not somebody that's made up a story to get asylum based on some ephemeral description of events in a land far away. This is an individual who made a minor technical mistake, but for that he'd be able to stay in this country with his wife and child. Why wouldn't the government want to accord not the hard edge of the law, but some justice here? Your Honor, again, he overstayed his visas twice. He had been convicted of drug possession. His attorney had conceded of an amount so small that the State — what was it, Utah? Nevada. Nevada. An amount so small that he was charged under a statute, the title of which is Possession of Marijuana Not Affecting Interstate Commerce. Is that right? I believe so, yes, Your Honor. Your Honor. Let me ask something here. I was kind of surprised that you didn't know the record better than us because we have so many more cases in one week than you do. And I just checked this sheet and I see you come from D.C. and I was thinking, gee, what else would you read on an airplane except the record? Have you talked to your superiors about this case? About whether they want to mediate it? What if the Ninth Circuit says, would you like to mediate it? Have you talked to them? I have discussed this case, Your Honor. I have not discussed mediation. At this point in time, our position is that Petitioner has conceded, that they've conceded. Petition's not that great. It looks like it's in the context of trying to get a continuance so that there can be an adjustment of status. You're not so, you know, that's your long pass and maybe it will get caught in the end zone, maybe not. Once you get beyond that, then it gets a little more esoteric. And I was just wondering if you had discussed, I gather you did not discuss with your superiors the possibility that the panel might suggest mediation. Has there been any kind of settlement discussion? No, Your Honor. There has been no mediation discussions. Your problem when you don't have that kind of discussion is you risk getting law, which may from the point of view of your service be bad law, out of the Ninth Circuit. You're kind of in the position of an insurance company that tries to settle cases with good law, bad facts. Well, go ahead. Well, I'm not sure that at this point I would agree, Your Honor. I think it's a simple case. Petitioner has conceded. His counsel has conceded twice that he's removed. You know, we're dealing with human beings. Don't you understand that? Don't you understand that? I understand that. With a person who came here at a very young age, has lived here practically all his life, you know. His family is here. They're all here legally. You know, he's married to a woman who's an American citizen. He's got a kid who's an American citizen. And he got convicted of some very, very minor marijuana offense that most States don't even concern themselves about. So we're just going to take him and throw him out and ruin his life and break up the family and send him back to the Philippines? Your Honor, the laws are passed by Congress. It's the job of the Department of Justice to enforce them, defend them in the court of law. I didn't take Latin in high school, but I'm glad that my brother Hawkins enlightened me. Because we have some judges that refer to your agency as the Department of Injustice. And our job is to administer justice. That's our oath. Have I got it right that when he went to Canada the first time, he had this conviction, and that's why he couldn't get a visa, so he got paroled? When he went the second time, the conviction was gone. It had been vacated, erased. He'd be fine for a visa, except he was late. Well, he overstayed his visa, Your Honor. That's what I just said. Yes. Is that right, though? So his problem with getting into the country is no longer the dope charge, because that's gone. It's been vacated. His problem is overstay. That's correct, Your Honor. He did overstay. So the issue now is exclusion of an overstayer rather than exclusion of somebody convicted of a drug offense. Well, he's still excludable under 212A, Your Honor. That's a pretty limited class of cases, isn't it? I mean, it deals with the application of a program that's long since gone. That's correct, Your Honor. That program is long since gone. Do you have any idea how many cases there are like this in the pipeline? I don't, Your Honor. It's possible this is the only one. I can't speak to that, Your Honor. I see my time is up. We're still waiting. You can stay as long as you want. We'd like to have you here. We still believe that the petition for review should be denied for the reasons stated here and for our brief. Thank you. Do you want to say something? Negotiations aren't concessions, firstly. Secondly, negotiations are not concessions. There were no concessions. There were negotiations. Secondly, this Court reviews the order of the Board of Immigration Appeals, not the immigration judge. And the Board's decision spent 95% of its text arguing against what is being claimed to be a moot point. What was that last word you said? The last word? The Board's decision spent 95% of its text arguing against what is being alleged to you to be a moot point, something that's settled. It's not logical. That's your last point. I think the Court is ‑‑ thank you very much, Your Honor. Why don't we just tell him to mediate and tell him to talk to his boss and give him 30 days right now. Do you want to do that? Yeah. Do you have any more questions, Your Honor? No, no, no, no. What if we ‑‑ I like the idea of giving him 30 days and have him back here. Yeah. Physically. Yeah. I thought we should explicitly say talk to your boss. Yeah. Mr. Nazaroff, who's your boss at the Department of Justice? Who's my boss? Yeah. The director, Tom Lusty. Who? Tom Lusty. At the top of the chain would be Kevin Rooney. Somebody's shaking their head back there. Who's at the top of the oil chain? Tom Lusty. Okay. And what is your position, sir? I'm a senior litigation counsel. Okay. Thanks for your help on that. Go ahead. All right. So you talk to that person about mediating this matter. And then we'll continue this matter for 30 days and have you back here, and we'll see where we go from there. Okay. Panel will issue a written order following this. You'll get that. Yep. Okay. Next. Thank you. Thank you.
judges: Pregerson, Kleinfeld, Hawkins